UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMANDA B., <br><br> Plaintiff, <br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, <br><br> Defendant. | CASE NO. C18-5457 BHS <br><br> ORDER REVERSING AND REMANDING DENIAL OF BENEFITS |

## I. BASIC DATA

Type of Benefits Sought:

    (X) Disability Insurance

    (X) Supplemental Security Income

Plaintiff's:

    Sex: Female

    Age: 43 at the time of alleged disability onset.

Principal Disabilities Alleged by Plaintiff: Osteoarthritis in both knees; anxiety; depression; lower back pain; scoliosis. AR at 84.

Disability Allegedly Began: October 1, 2006.

Principal Previous Work Experience: Cook, fast food; psychiatric technician.

Education Level Achieved by Plaintiff: GED.

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

This is the second time this case is before the Court. Administrative Law Judge ("ALJ") Cynthia Rosa held a hearing on January 15, 2015, after which she issued a decision finding Plaintiff not disabled. *See* AR 12-26, 34-57. On March 6, 2017, Judge Richard Lasnik reversed that decision and remanded the matter for further proceedings, finding that ALJ Rosa erred by failing to give specific and legitimate reasons for discounting the opinions of examining psychologist Bruce Eather, Ph.D. *Id.* at 678-87. On remand, the matter was considered by ALJ Andrew Grace. *See id.* at 592-46.

- Before ALJ:

    Date of Hearing: October 2, 2017

    Date of Decision: March 2, 2018

    Appears in Record at: 596-611

    Summary of Decision:

    The claimant meets the insured status requirements of the Social Security Act (the "Act") through March 31, 2010.

    The claimant has not engaged in substantial gainful activity since the alleged onset date. *See* 20 C.F.R. §§ 404.1571, *et seq.* & 416.971, *et seq.*

    The claimant has the following severe impairments: status post left knee arthroscopy with partial medial and lateral meniscectomies; bilateral knee osteoarthritis; mild lumbar spine degenerative disc disease; major depressive disorder; generalized anxiety disorder; left shoulder adhesive capsulitis and glenohumeral arthritis, status post surgical report; posttraumatic stress disorder; insomnia; hearing loss; tympanic membrane perforation; auditory canal stenosis; tympanic membrane retraction. *See* 20 C.F.R. §§ 404.1520(c) & 416.920(c).

    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 & 416.926.

The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b). She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for four hours in an eight-hour work day. She can sit for six hours in an eight-hour work day. She can occasionally operate foot controls. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, and crouch. She can never crawl. She must avoid concentrated exposure to hazards. She can perform simple, routine, repetitive tasks consistent with unskilled work. She is limited to performing low-stress work, requiring few decisions and workplace changes. She cannot tolerate public contact. She can tolerate occasional superficial contact with coworkers. She can occasionally reach overhead with her left arm, and frequently reach in all other directions with her left arm. She is limited to a moderate noise level.

The claimant is unable to perform any past relevant work. *See* 20 C.F.R. §§ 404.1565 & 416.965.

Prior to the established disability onset date, the claimant was a younger individual and then an individual closely approaching advanced age. Applying the age categories non-mechanically, and considering the additional adversities in this case, on December 12, 2017, the claimant's age category changed to an individual of advanced age. *See* 20 C.F.R. §§ 404.1563 & 416.963.

The claimant has at least a high school education and is able to communicate in English. *See* 20 C.F.R. §§ 404.1564 & 416.964.

Prior to December 12, 2017, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills. Beginning on December 12, 2017, the claimant has not been able to transfer job skills to other occupations. *See* Social Security Ruling ("SSR") 82-41 & 20 C.F.R. Part 404, Subpart P, Appendix 2.

Prior to December 12, 2017, the date the claimant's age category changed, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national

economy that the claimant could have performed. *See* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 & 416.969(a).

Beginning on December 12, 2017, the date the claimant's age category changed, considering the claimant's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that the claimant could perform. *See* 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c) & 416.966.

The claimant was not disabled prior to December 12, 2017, but became disabled on that date and has continued to be disabled through the date of this decision. Her disability is expected to last twelve months past the onset date. *See* 20 C.F.R. §§ 404.1520(g) & 416.920(g).

The claimant was not disabled prior to March 31, 2010, the date she was last insured for benefits under Title II of the Act.

- Before Appeals Council:

The Appeals Council did not assume jurisdiction of the case, and Plaintiff did not seek review by the Appeals Council. *See* Pl. Op. Br. (Dkt. # 7) at 2. The ALJ's decision thus became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.984(d) & 416.1484(d).

### III. PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

### IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than

a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V. EVALUATING DISABILITY

Plaintiff, as the claimant, bears the burden of proving she is disabled within the meaning of the Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520 & 416.920. The claimant bears the burden of proof during steps one through four. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. *Id.*

## VI. ISSUES ON APPEAL

Whether the ALJ properly evaluated the opinions of Bruce Eather, Ph.D.

## VII. DISCUSSION

The only issue before the Court is whether the ALJ erred in rejecting the opinions of examining psychologist Bruce Eather, Ph.D. *See* Pl. Op. Br. at 1. Dr. Eather examined Plaintiff on May 24, 2012. *See* AR at 437-43. He conducted a clinical interview, performed a mental status examination, and administered several psychological tests. *See id.* Dr. Eather diagnosed Plaintiff with depressive disorder, anxiety disorder, amphetamine dependence in sustained full remission, and personality disorder with avoidant and dependent traits. *Id.* at 437. He also assessed Plaintiff a Global Assessment of Functioning ("GAF") score of 45. *Id.* at 438. Based on his findings, Dr. Eather opined that Plaintiff's symptoms were "likely to interfere with her ability to optimally perform tasks, interact with others, including the public, adapt to changes, and handle the day-to-day stress of a work environment." *Id.* at 439. He further opined that her "[m]ental condition would likely diminish her attention, concentration, persistence, and task performance." *Id.*

The ALJ gave Dr. Eather's opinions little weight. *See id.* at 603-04. To reject the opinions of an examining doctor that are contradicted, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). The Court may also draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

This is the same issue that was before Judge Lasnik when the Court last considered this matter. *See* AR at 683. In the first decision, ALJ Rosa rejected Dr. Eather's opinions because Dr. Eather "d[id] not appear to consider his finding that the claimant scored 9/15 on the Rey test, which was a borderline indication of memory malingering," and his opinions were largely based on Plaintiff's self-reports. *Id.* at 23.

Judge Lasnik found that neither of these reasons was specific, legitimate, or supported by substantial evidence. *Id.* at 684. Dr. Eather's report demonstrated that he had in fact considered Plaintiff's score on the Rey test, "but provided his ultimate opinion regarding plaintiff's functional capacity in light of the entire clinical interview, his professional observations, and other objective test results." *Id.* at 685. ALJ Rosa further failed to explain why evidence of malingering on a memory test would invalidate Dr. Eather's opinions regarding Plaintiff's social and stress-related limitations. *Id.*

As to ALJ Rosa's second reason, Dr. Eather's opinions were based on his clinical testing and observations, not just Plaintiff's subjective self-reports. *Id.* at 684-85. ALJ Rosa thus erred in rejecting Dr. Eather's opinions for being too heavily based on Plaintiff's self-reports. *Id.*

In the current decision, the ALJ again rejected Dr. Eather's opinions. *Id.* at 603-04. He first opined that Dr. Eather's GAF score "lack[ed] probative value," noting, among other things, that the *Diagnostic and Statistical Manual of Mental Disorders*, 5th edition, 2013 ("DSM-V"), no longer recognizes GAF scores. *Id.* The ALJ did not err in reaching this conclusion. The American Psychiatric Association dropped the GAF score from the DSM-V because it lacked clarity and had questionable value in routine practice. *See Golden v. Shulkin*, 29 Vet. App. 221, 224 (Vet. App. 2018). To the extent Plaintiff challenges the ALJ's reasoning here, the Court finds no error.

The ALJ next rejected Dr. Eather's functional assessment. AR at 604. He gave several reasons for this, none of which was specific, legitimate, or supported by substantial evidence.

The ALJ first discounted Dr. Eather's functional assessment because he determined that it was "not supported by the mental status examination findings in his assessment." *Id.* at 604. The ALJ erred in reaching this conclusion. An ALJ may reject a doctor's opinions if it is inconsistent with the doctor's clinical findings or the overall medical record. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). But the ALJ may not substitute his own lay medical opinion for that of a trained medical expert. *Cf. Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir.

2011) (holding that an ALJ may not substitute his lay personal observations of the claimant for the opinions of the claimant's treating physicians); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is "not qualified as a medical expert"). Here, the ALJ pointed to a few generic findings in Dr. Eather's report that supposedly contradicted the doctor's opinions, such as the fact that Plaintiff was cooperative, oriented, and able to concentrate. *See* AR at 604. But the ALJ ignored other findings that supported Dr. Eather's opinions, such as the fact that Plaintiff was "tearful at times and very anxious," or that Dr. Eather observed Plaintiff's symptoms of anxiety, including her difficulty relaxing, nervousness, and panic attacks. *See id.* at 437, 439. The ALJ did not adequately explain why his interpretation of Dr. Eather's findings was more correct than that of the doctor who made those findings. *See Reddick*, 157 F.3d at 725. He therefore erred.

The ALJ next discounted Dr. Eather's opinions because he determined that Plaintiff's mental health improved in the years after Dr. Eather's exam. The ALJ's determination is not supported by substantial evidence, nor was it a legitimate reason to discount Dr. Eather's opinions. When evaluating a claimant's condition, "[a]n ALJ cannot simply 'pick out a few isolated instances of improvement over a period of months or years' but must interpret 'reports of improvement . . . with an understanding of the patient's overall well-being and the nature of her symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)) (alterations in original).

The ALJ gave no citations to the record in this section of his decision, but elsewhere pointed to scattered references to show Plaintiff's alleged improvement. *See* AR at 604, 606. Those references do not accurately reflect Plaintiff's overall well-being. "As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence . . . ." *Garrison*, 759 F.3d at 1017. This is exactly what Plaintiff's records indicate. For example, the ALJ cited to six counseling appointments between June and September 2016 which he believed showed Plaintiff's symptoms improved. *See id.* at 606, 904, 908, 910, 919, 921, 923. But records from before and after this period show Plaintiff continued to suffer from anxiety and related mental health issues. *See, e.g.*, *id.* at 811, 815, 817, 872, 874, 898, 901. The ALJ thus erred in rejecting Dr. Eather's opinions on this basis. *See Moe v. Berryhill*, 731 F. App'x 588, 590 (9th Cir. 2018) (holding that "[i]t was improper for the ALJ to rely on isolated signs of improvement from the Willapa Counseling progress notes to discredit Dr. Brown's opinion when the Willapa Counseling progress notes as a whole showed persistent symptoms of paranoia and PTSD") (citing *Garrison*, 759 F.3d at 1018).

Along the same lines, the ALJ noted that Plaintiff had gaps in her mental health treatment, which he concluded suggested that Plaintiff's mental condition was less severe than alleged. *See id.* at 604. The ALJ erred in his analysis. The record indicates that Plaintiff may have failed to seek or continue treatment because she could not afford it. *See, e.g.*, *id.* at 517, 558-59. An ALJ must not draw any adverse inferences about a

claimant's symptoms based on failure to seek or comply with treatment "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints," such as the inability to afford treatment. SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017); *see also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The ALJ's decision does not indicate that he considered Plaintiff's alleged inability to pay as an explanation for her failure to seek mental health treatment, and thus the ALJ erred.

Finally, the ALJ noted that Plaintiff "was able to perform babysitting activity, which undercuts Dr. Eather's statements about her not being able to do any kind of work." AR at 604. This is not an accurate reflection of the record evidence. First, Dr. Eather did not opine that Plaintiff cannot do any work; he opined that she had limitations due to her symptoms. *See id.* at 439. Second, Plaintiff testified that she and her husband babysat their grandchild or grandchildren "from the end of July until the mid [sic] of August." *Id.* at 630. Plaintiff was not babysitting alone, and she was watching family members at her daughter's home. *Id.* The ALJ did not adequately explain how such a brief activity involving close family members contradicted Dr. Eather's opinions that Plaintiff was limited in her abilities to interact with others, adapt to changes, and handle the daily stress of a normal work environment. He consequently erred. *See Reddick*, 157 F.3d at 725.

The ALJ's errors were not harmless. The Court cannot consider an error harmless unless it can "confidently conclude that no reasonable ALJ, when fully crediting the [improperly rejected evidence], could have reached a different disability determination."

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The only difference between ALJ Grace's decision and ALJ Rosa's decision relevant to Dr. Eather's opinions is that ALJ Grace's RFC added a limitation to low-stress work. *See* AR at 18, 601, 604. Dr. Eather's opinions covered more than just stress level. *See id.* at 549. The Court is unable to conclude with certainty that the outcome would have been the same here despite the ALJ's error, and thus the error was not harmless. *See Stout*, 454 F.3d at 1055-56.

**B.     Scope of Remand**

Plaintiff did not specify the type of remand she seeks. *See* Pl. Op. Br. at 1. The Court will therefore exercise its discretion and order remand for further proceedings. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). On remand, the ALJ must reevaluate Dr. Eather's opinions and reassess the RFC, as well as the conclusions at steps four and five of the disability determination process.

## VIII.     ORDER

Based on the foregoing, it is hereby **ORDERED** that the Commissioner's final decision denying Plaintiff disability benefits is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 7th day of November, 2018.

BENJAMIN H. SETTLE
United States District Judge